UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FOUNDATION HEALTH SERVICES, INC.,
ET AL.

VERSUS

ZURICH AMERICAN INSURANCE
COMPANY

CIVIL ACTION

NO. 15-59-JJB-EWD

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment. The first is a Motion for Summary Judgment (Doc. 28) brought by the defendant, Zurich American Insurance Company ("Zurich"), seeking to dismiss all of the plaintiffs' claims. The second is a Motion for Partial Summary Judgment (Doc. 29) brought by the plaintiffs, Foundation Health Services, Inc., et al. ("the plaintiffs"). Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, Zurich's Motion for Summary Judgment (Doc. 28) and the plaintiffs' Motion for Partial Summary Judgment (Doc. 29) are **DENIED**.

**I.   BACKGROUND**

This insurance dispute has its origins in an investigation by the Department of Health and Human Services beginning in November 2010. The investigation ultimately led to the Department of Justice ("DOJ") asserting a claim against the plaintiffs[1] under the False Claims Act for worthless services. The plaintiffs eventually reached a settlement with the United States, acting through the DOJ, and the State of Maryland. In the present suit, the plaintiffs seek recovery of their defense costs and other losses associated with the settlement.

---

[1] Foundation Health Services, Inc. provides financial services to the plaintiffs, which are in the business of providing nursing home services to individuals, and a large percentage of those services are qualified under the Medicare or Medicaid programs. *Pls.' Original Compl.* ¶ 3.1, Doc. 1.

1

Zurich issued two claims-made policies to the plaintiffs—the DOC Policy[2] and the MPL Policy.[3] The DOC Policy was effective for the period of June 1, 2011 to April 1, 2012. One month after the expiration of the DOC Policy, the MPL Policy became effective for the period of May 1, 2012 to May 1, 2013. The DOC Policy states that Zurich will provide coverage for "all **Loss** . . . which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them . . . during the **Policy Period** . . . for a **Wrongful Act** taking place before or during the **Policy Period**." *DOC Policy* 3, Doc. 29-4. "Claim" is defined as: "1. a written demand for monetary damages, [or] . . . 4. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, against any **Insured** for a **Wrongful Act**." *Id.* at 4.

In January 2012, the DOJ contacted the plaintiffs and set a meeting for January 18, 2012, ("the January 18 Meeting") at the United States Attorney's office in Baltimore, Maryland. An estimated 15–18 people attended, including several representatives of the plaintiffs, the Department of Health and Human Services, the Office of the Inspector General, the United States Attorneys' Office, and the DOJ. During this meeting, the DOJ presented a PowerPoint presentation that identified numerous alleged deficiencies with the quality of patient care rendered by the plaintiffs, and cited issues with nurse training and staffing. No written materials were distributed at the January 18 Meeting.

Although no written materials were distributed at the meeting, the DOJ emailed a redacted version of the PowerPoint slides to the plaintiffs eight days later. Andrew Penn, a trial attorney with the DOJ who presented the PowerPoint at the January 18 Meeting, testified that the withheld

---

[2] The Court uses the term "DOC Policy" to refer to the Non-Profit Directors, Officers and Employees Liability and Reimbursement Policy, bearing Policy No. DOC 5345019 06. *See* Doc. 29-4.
[3] The Court uses the term "MPL Policy" to refer to the Not-For-Profit Select Insurance Policy, bearing Policy No. MPL 5345019-07. *See* Doc. 29-5.

slides were protected by the work product doctrine. *Penn Dep.* 12:21–14:14, Doc. 40-4. The redacted version of the PowerPoint presentation did not assert the plaintiffs violated any laws or billed the government for worthless services. *See PowerPoint*, Doc. 39-8. The redacted version also did not assert any demands of the plaintiffs—monetary or otherwise. *See id.*

After the January 18 Meeting, the plaintiffs responded to the DOJ's presentation by letter. *Letter from Julie B. Mitchell, Mitchell Day Law Firm, to Andrew S. Penn, Trial Attorney, DOJ* (March 16, 2012), Doc. 28-11. The plaintiffs informed the DOJ that they had identified the top five recurring issues and were implementing a revised Corporate Compliance Plan. *Id.* The letter also discussed the plaintiffs' plans to correct the alleged deficiencies with patient care and their facilities, but did not mention the False Claims Act or a demand by the DOJ for monetary damages. *Id.*

The MPL Policy became effective on May 1, 2012. *See MPL Policy*, Doc. 29-5, at 4. On May 16, 2012, the DOJ responded to the plaintiffs by letter ("DOJ's May 16 Letter"). *Letter from Thomas F. Corcoran, Assistant U.S. Attorney, to Julie B. Mitchell, Mitchell Day Law Firm* (May 16, 2012), Doc. 29-11. The DOJ's May 16 Letter outlined the damages sustained by Medicaid and Medicare for the worthless services provided at the plaintiffs' facilities and stated that "any resolution of this matter must include a Corporate Integrity Agreement." *See id.* at 3–5. The plaintiffs provided notice of the claim and tender of defense to Zurich on May 24, 2012—during the MPL Policy Period.

Zurich recognized the DOJ's May 16 Letter as a "Claim," but nevertheless denied coverage as to both defense and indemnity under the MPL Policy; Zurich asserted that exclusions within the MPL Policy precluded coverage. *Letter from Richard F. Nacchio, Claims Counsel, Zuirch Am. Ins. Co., to Cindy Gayle, Corp. Compliance Officer & Human Res. Dir., Found. Health Servs.,*

3

*Inc.* (August 3, 2012), Doc. 28-13. After receiving Zurich's denial letter addressing only the MPL Policy, the plaintiffs subsequently made a second demand to Zurich, this time specifically seeking reimbursement under the DOC Policy. *Letter from Michael A. Heilman, Heilman Law Group, to Richard F. Nacchio, Claims Counsel, Zurich Am. Ins. Co.* 2 (September 14, 2012), Doc. 29-17. Zurich never responded. With Zurich's written consent, the plaintiffs settled the DOJ's claim for worthless services for a monetary payment along with the agreement to enter a corporate integrity agreement. The plaintiffs subsequently brought this suit claiming breach of contract based on Zurich's alleged breach of its duty to defend and indemnify under the DOC Policy, as well as a breach of the duty of good faith and fair dealing.[4]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-

---

[4] The plaintiffs have not asserted a claim for breach of contract under the MPL Policy.

4

moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322–23.

### III.  DISCUSSION

One of the central issues presented in this case is whether a claim was first made during the Policy Period under the DOC Policy, or if the claim was first made under the later MPL Policy. Zurich argues that there was no "Claim" within the DOC Policy Period. Accordingly, because there was no coverage under the DOC Policy, then there was no duty to defend or indemnify nor is there a basis for a breach of the duty of good faith. The plaintiffs counter that there was coverage under the DOC Policy because the PowerPoint presentation at the January 18 Meeting satisfies both relevant definitions of "Claim," and thus a Claim was made within the DOC Policy Period. The plaintiffs also argue that no exclusions are applicable to preclude coverage, and that Zurich breached the duty of good faith. Because many of the plaintiffs' arguments are predicated on a finding of coverage, it is logical to first address whether there was coverage under the DOC Policy.

In this case, there is a genuine issue of material fact regarding whether the PowerPoint presentation constitutes "a written demand for monetary damages." The plaintiffs cite to the testimony of several of their representatives who were present at the January 18 Meeting, all of whom testify that the PowerPoint contained slides outlining the damages the DOJ sought from the plaintiffs. *See Pittman Dep.* 71:16–72:2, 82:11–16, Doc. 40-3; *Daspit Dep.* 30:20–31:14, Doc. 40-1. Meanwhile, Andrew Penn, who presented the PowerPoint at the January 18 Meeting, gave conflicting testimony as to the contents of the PowerPoint presentation and the purpose of the meaning. At one point, he gives testimony favorable to the plaintiffs, stating that during the January 18 Meeting, the DOJ informed the plaintiffs that "the claims against Foundation involved Foundation paying damages for violation of the False Claims Act," and that "any resolution of this

case would include a monetary settlement for worthless services." *Penn Dep.* 32:4–10, 37:2–11, Doc. 40-4. At other times, Penn gives testimony favorable to Zurich, stating that the government did not make a written demand for monetary damages at the January 18 Meeting and that the purpose of the meeting and the PowerPoint was merely to present the DOJ's tentative findings with respect to its concerns regarding the quality of patient care. *Id.* at 14:22–15:3; 28:21–29:14. Given the factual discrepancy as to the contents of the PowerPoint presentation, the Court cannot determine at this time whether the PowerPoint constitutes "a written demand for monetary damages" within the meaning of the DOC Policy, and therefore cannot grant summary judgment for either party.[5] Because this is a factual dispute central to the remainder of both parties' claims and defenses, the Court will not address the various other arguments asserted by the parties in the cross motions for summary judgment.

**IV.   CONCLUSION**

For the reasons stated above, Zurich's Motion for Summary Judgment (Doc. 28) and the plaintiffs' Motion for Partial Summary Judgment (Doc. 29) are **DENIED**.

Signed in Baton Rouge, Louisiana, on April 20, 2016.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[5] The Court does not conclude, as a matter of law, that the entirety of the PowerPoint presentation at the January 18 Meeting constitutes "a written demand for monetary damages." Instead, the Court only finds that it cannot grant summary judgment when there is a genuine issue of material fact as to the contents of the PowerPoint presentation.